No. 10.—EDWARD B. HOOK, plaintiff in error, *vs.* STOVALL, DUNN & Co., defendants in error.

[1.] New trial ordered because the verdict of the Jury is contrary to evidence.

*Complaint*, in Jefferson Superior Court, before HOLT, Judge, June Term, 1856.

This was an action on a promissory note, brought by Stovall, Dunn and Co., against Edward B. Hook.    It appeared that the consideration of the note, was the purchase money of a slave named Mary, sold by plaintiff below to defendant below.

Defendant alleged unsoundness at the time of sale, and relied upon the warranty in the bill of sale, which was as follows, viz:

"GEORGIA, JEFFERSON Co., March 6th, 1852.

"Received of E. B. Hook six hundred and thirty dollars in full payment for a negro girl slave by the name of Mary, about fourteen years of age, dark complected, *the right eye smaller than the left*, the title to whom we warrant and defend in law against ourselves and all other persons.    We also warrant said slave to be sound in every respect both in

mind and body. In witness whereof we hereunto affix our hand and seal the day and year above written.

"STOVALL, DUNN & CO., [*L. S.*]"

"Witnessed by
                    his
STEPHEN W. ✗ ROSIER."
                   mark.

*Dr. Dixon,* sworn on part of defendant, said that he had examined the girl at the request of the defendant; he found the left eye much protruded. This protrusion was the result of a diseased tumor lying behind the ball of the eye; he regarded the tumor as an indolent one, probably of the fatty variety. Such tumors sometimes lie for a considerable time in the system in an inert condition, but are liable at any time to be awakened and take on increased action by reason of any perturbation, by child bearing, nursing &c. Had no doubt it would destroy the eye, and might possibly, through the inflammation which would necessarily exist at the time, involve the brain through the channel of the optic nerve, and prove fatal. He even regarded this as probable. He would not want her himself at any price. She might at public sale bring five hundred dollars. His opinion was, the diseased tumor was in the eye as far back as March 6th, 1852.

*Cross examined,* said that he had known defendant for some time, and been on terms of intimacy and friendship with him. Did not regard it as a mere deformity—"a pop eye"—it was a disease, an indolent tumor lying under and behind the ball of the eye. Had never seen the girl until during Court, and was then for the first time called on to examine her professionally by the defendant. Do'nt say anything about her value at the time of purchase. The sight was not now defective that he knew of. The defendant is an experienced physician.

*Dr. Campbell,* sworn, concurred in the opinion of Dr. Dixon as to the nature of the disease in the girl's eye, "that she

Hook vs. Stovall, Dunn & Co.

had a fatty tumor in the socket of her eye which caused the protrusion," but could not say as to its origin or inception that he formed any opinion. The effect of a tumor of this character would be to protrude the ball of the eye and finally destroy vision by pressure on the optic nerve. The examination made by him was since her confinement. He had seen the tumor before and it had increased. Considered the tumor as very materially injuring her value. Had mentioned that it might be scrofulous, and if so she must have inherited it. Does not recollect whether her sight was affected or not. Saw no indications of scrofulous unless the tumor be regarded one. The enlargement does not necessarily indicate scrofula. His decided opinion is that the enlargement was caused by a diseased tumor. Cannot say that it existed on the 6th March 1852.

A witness, *John Gun*, testified that he had frequently seen the girl at defendant's and always noticed the enlargement of the eye. Several witnesses testified that the disease materially impaired her value and one thought to the amount of three or four hundred dollars.

Plaintiffs examined several witnesses in rebuttal, and proved that for some time after defendant purchased the girl he had expressed himself as highly pleased with her; that he had been offered nine hundred dollars for her, which he refused to take, and that no complaints were heard until after suit was instituted against him.

The case under the charge of the Court was submitted to a special jury, it being on the appeal, who found for the plaintiffs the full amount of the note.

Defendant moved his Honor, the presiding Judge, for new trial, on the ground that the verdict was contrary to the law as given in charge by the Court, and contrary to the evidence.

Upon argument the Judge refused to grant the motion for a new trial, and defendant excepts.

JOHN SCHLEY, for plaintiff in error.

E. H. POTTLE, for defendants in error.

*By the Court.*—MC DONALD, J. delivering the opinion.

Whether a new trial ought to be granted in the case depends entirely on the evidence. The action was on a promissory note given by defendant to plaintiffs. The defence was the breach of a warranty of soundness of a negro, whose price constituted the consideration of the note. The promissory note and bill of sale bear the same date, 6th March, 1852, and one witness testifies that the consideration of the note was the negro conveyed by the bill of sale. The bill of sale states that the right eye is smaller than the left, and warrants the negro girl to be sound in every respect, in mind and body. The record shows no plea, but the case proceeded before us, as well as in the Court below, as though there was a plea putting in issue the soundness of the negro at the time of warranty. The main question is, ought the Jury to have found from the evidence in the record that the negro was unsound at the time of the warranty? There was either a disease or a deformity of the eyes of the girl, at the time of the sale. It is stated in the bill of sale that the right eye is smaller than the left. If it had been a deformity merely, however it might have affected her appearance, and, simply on that acount, her value also, the defendant could have had no rebatement of the price agreed to be paid. But it is not so, if the eye was diseased. There was a warranty of soundness, and that warranty bound the seller, whether he knew it or not, if it existed at the time. That it was of no apparent injury at the time, or for some considerable time afterwards, does not relieve the party from the effect of his contract. He is liable without fraud, if there was disease at the time, however harmless it may have been for a time, and however tardy its development, and slow in its injury to the

purchaser. The evidence shows, that in the opinion of experts, the disease of the eye is an indolent tumor and that such tumors occasionally lie in the system, for a considerable time, in an inert condition, but are liable to be awakened and take on increased action by reason of any perturbation, such as child bearing, nursing &c. &c. The left eye was considerably protruded. Dr. Dixon, who examined the eye, gave it as his opinion that the diseased tumor was in the eye as far back as the 6th of March, 1852. Dr. Campbell, who testified, gave no opinion as to the length of time the tumor had existed. He examined the tumor since the girl's confinement and thinks it had increased.

Mrs. Robinson testifies that she hired the negro girl Mary for four or five months in 1855. One eye was much larger than the other. She had a child while she was in her possession, which caused her eye to enlarge and to continue to enlarge while she knew her. This is the amount of the evidence of the existence of the disease at the time of the warranty. The right eye was smaller than the left. The left eye, after bearing her child, was considerably protruded and continued to grow.

The plaintiffs offered in evidence the declarations of the defendant of the high value he placed on the girl, and for a considerable time after he bought her, but the testimony does not bring it down to the time of the development of the disease. As long as he regarded the appearance of the eye as nothing more than a deformity, his sayings are entitled to no consideration in reference to that part of the issue. The evidence was all on the side of the defendant as to the existence of the disease at the time of the warranty. We think that the verdict of the jury was contrary to the evidence, inasmuch as, finding the full amount of the note, they must have found that the eye was not diseased at the time of the warranty. In the case of Joliff against Bendell a recovery was had on a warranty of soundness of sheep, which were at the time of sale, in appearance, perfectly sound and thriv-

ing, and continued so for two months. Many of the sheep after that time became diseased and died. The finding was, on the opinion of persons conversant with sheep, that they had an hereditary disease. *Ryan and Moody's Repts.* 136; 21 *Eng. C. Rep.* 397.

Let the judgment be reversed.